## INSTRUCTIONS TO JURY MUST BE TAKEN AS A WHOLE.

### Circuit Court of Cuyahoga County.

THE HOLLENDEN HOTEL COMPANY v. LULU JACKSON, ADMINISTRATRIX OF THE ESTATE OF ALBERT JACKSON, DECEASED.*

Decided, January 23, 1907.

*Trials—When Judgment Not Reversed on Weight of Uncontradicted Evidence—Charge to Jury to be Taken as a Whole.*

1. Where the evidence of a witness as to the instructions he had given plaintiff's decedent, although uncontradicted by any other witness, is in other particulars so contradictory and inconsistent with itself as to indicate that his testimony is from impressions rather than from distinct recollections, a judgment will not be set aside as against the weight of the evidence.

2. A charge to a jury is to be construed as a whole, and if, construing the whole charge, the law of the case appears to nave been correctly given to the jury, and in a way that will reasonably enable them to understand the rules of law which they are to apply to the evidence before them, the charge will not be held erroneous simply because every condition to a recovery or a defense is not embraced in each paragraph, and the paragraph excepted to is not in itself calculated to mislead.

MARVIN, J. (orally); TAGGART, J., and DONAHUE, J. (sitting in place of Judges Winch and Henry), concur.

----

*Affirmed without opinion, *Hollenden Hotel Co.* v. *Jackson*, 78 Ohio State, 440.

The parties are reversed here from the standing which they had in the court below; suit being brought in that court by the administratrix of Albert Jackson, deceased, against the Hollenden Hotel Company, a corporation, conducting a hotel in this city, and recovery was had for the alleged wrongful death of Albert Jackson.

The Hollenden Hotel Company in carrying on the business of a hotel has four steam boilers in the basement and a corps of men to do the work attendant upon the keeping in operation those boilers. Three of the boilers are kept in commission, as it is called, one being out of commission all of the time, or substantially so.

On Saturday night, the steam is taken off from some one of the boilers, and that boiler is cut off from operating, and it is left in that condition until the Tuesday morning following, when the boiler thus out of commission is washed out, and again made ready for being put into commission, and that was done at the time when Jackson was killed by scalding steam let in a boiler which he was undertaking to clean, on the 12th of April, 1904.

It is said in the petition below, that the defendant below was negligent in that it had no rules for the conduct of the business of handling the boilers; that it was a dangerous business; that is was a business which required that there should be some fixed rules for its management. It is said on the part of the plaintiff below that not only was there negligence in the failure to provide rules, but on the occasion of Jackson's death he was ordered to go into a boiler, steam was turned into the boiler while he was in there washing it out, and he was scalded to death.

The defendant says it had proper rules which, if they had been observed, would have saved this man from the accident which resulted in his death, and that on the occasion of his going into the boiler he was distinctly ordered by his foreman, Samuel A. Schad, who was the assistant engineer, to stay out of the boiler, until he (Schad) should return. The situation was about this: that this Tuesday morning, the 12th of April, 1904, Jackson, who was a laborer, and whose duty, among other duties,

was the washing out the boiler, went, by the direction of Schad, on top of one of the boilers. The manhole on the top of the boiler was open. Schad went away while Jackson was on top of the boiler with a hose in his hand, through which water was coming, and during the absence of Schad, Jackson went into the boiler, and while in there somebody turned the stop-cock on and let the steam into the boiler. The evidence as to the rules is such that surely the jury could not have found that there were any such rules published to these men employed about the boilers as there should have been. Schad said, it was my rule that nobody was to go into the boiler without first reporting to the fireman that he was going in, and he considered the rule to be that men were not to go into the boilers without first reporting, but nowhere does he say that there were any rules established by anybody who had authority to enforce them. He says that he told the men who were there, employed about the boilers, that they were not to go into the boilers until he told them so to do, but he does not seem quite sure about it being a rule, indeed he is very indefinite himself as to what the rules were, and the jury certainly would not have been justified in finding that there were proper rules in force. But, if Jackson finding the instructions given to him at that time to be such as they were claimed to be, then his administratrix was not entitled to recover in this case. Now the evidence on that point is not quite clear. Schad, who was Jackson's superior, says that Jackson went upon the top of the boiler, and the boiler was some eight feet high; that he took a step ladder to get up there, and that he (Schad) handed him the hose, so that he could connect it there, and that he had the hose in his hand, and he (Schad) then said, "I am going away, don't go into the boiler until I get back." Carr, who was, as Schad says, ten, twelve or fifteen feet away, testifies that he did not hear Schad give this direction to Jackson not to go into the boiler until he came back. Nobody is able to say that that is not true, and in the nature of things it is quite possible that no one heard any order given, even if it was given to Jackson. Schad said he did, but Schad is evidently testifying from an impression rather than from a distinct recollection; for Schad says in one place that Jackson was

doing nothing. In another part of his testimony Schad says that Jackson was turning water into the boiler with the hose at the time he left, and that he was bending over to see where to place the hose, while he says in another place in his testimony, that the water had not yet been turned on; yet in another part of his testimony he says that the water was being forced in. Now that does not indicate that he was testifying from recollection, but it does indicate that he is reasoning it out. If he recollected that he told him to do a certain thing, he would have had a clearer recollection of what Jackson was doing when he left; Jackson was put up there to clean up the boiler; if he had no instructions and if there were no such rules as would require that some orders be given when one was to go into the boiler so that the steam would not be turned on, then he was not negligent, and it was negligent for the company to be without rules and to allow that steam to go in there. And so we would not reverse the case on the weight of the evidence.

But the charge is complained of because it is said that under the charge a recovery might have been had, even though Jackson was negligent in going into the boiler, without giving notice that he was going in, or for any other reason that he was negligent. The court at the request of the defendant, below, gave this in its charge:

"If the jury find from the evidence that plaintiff's intestate was instructed by his superior officer not to enter the boiler in question until said superior officer should return to said boiler room and that in violation of said instructions plaintiff did enter said boiler and receive the injuries which resulted in his death, then his administrator could not recover."

Now of course no complaint is made on the part of the hotel company to that; it was law applicable to the case. It is said, however, that another rule inconsistent to that was given in the general charge of the court when this was given:

"It is claimed by the defense, that he (Jackson) was directed not to enter the boiler without informing the fireman. I say to you that if the deceased was directed not to enter the boiler until he, the assistant engineer, returned, by the assistant engineer, and in violation of that direction he entered the boiler, and one of the fireman without knowledge of his presence in

ihere turned on the blow-off cock, and the steam backed up into the boiler and scalded him to death, his testatrix could not recover, for the reason that if such and the facts found by you, that is, if you find the fact to be that he was directed not to enter until the assistant engineer returned, then he failed in his duty to himself and to his employer, and his failure would be the cause of his death, and he would be guilty of contributory negligence, and a recovery would be barred by that fact.''

Now, it is not denied that that is the law. It is telling the jury of certain circumstances under which the plaintiff below could not recover, and it is not insisted that it is not true, as here stated, but it is said that the implication is that if the decedent had in violation of instructions gone into the boiler and the steam had been turned on by one of the employees of the Hollenden Hotel Company with knowledge of the presence of Jackson in the boiler, there could have been a recovery; that is, there could not be a recovery if this steam was turned on without knowledge, and it implies that notwithstanding the negligence of Jackson in going into the boiler in violation of express instructions, that there could be a recovery, if the steam had been turned on with knowledge of his presence, and that if the same was turned on by a fellow-servant with knowledge, still there ought to have been a recovery. We doubt every much whether that would be so, because the circumstances might be such, that it might be wanton. But, however, it may be there is an implication in this; that there could be a recovery notwithstanding the negligence of Jackson in going into the boiler in violation of the instructions he received, and the steam was turned on with knowledge of his presence there. We suppose it would be wrong if the court had so charged. It would hardly seem possible, however, that the jury could have gone wrong and misunderstood the language of the court, especially after being instructed in this wise:

''I say to you, gentlemen of the jury, that if he (Jackson) was directed not to enter the boiler until the assistant engineer returned, by the assistant engineer, and in violation of that direction he entered the boiler, and one of the firemen, without knowledge of his presence in there turned on the blow-off cock, and the steam backed up in the boiler and scalded him to death,

his administratrix could not recover, for the reason that if such are the facts found by you, that is, if you find the fact to be that he was directed not to enter until the assistant engineer returned, then he failed in his duty to himself and to his employer, and his failure would be the cause of his death, and he would be guilty of contributory negligence, and a recovery would be barred by that fact."

Now taking this charge altogether we find that the court had properly instructed the jury as to the law applicable to the case, as will be found in the case of *The Ohio & Indiana Torpedo Company* v. *Fishbern et al*, 61 O. S., 608.

We find no error in this record and the judgment is affirmed.